M. D. L. WHITAKER *et al. v.* JOHN F. WHITAKER *et al.*

CHANCERY PLEADINGS AND PRACTICE. *Administrator de bonis non.* An administrator *de bonis non* may, by bill in equity, have an account against a former administrator and his sureties.

FROM LINCOLN.

Appeal from the Chancery Court at Fayetteville. J. W. BURTON, Ch.

J. H. BURNHAM and A. S. MARKS for complainants.

HOLMAN & HOLMAN for defendants.

TURNEY, J., delivered the opinion of the court.

W. B. Rhea, died intestate in Lincoln county in February, 1861. In March, 1861, Hugh Thomason was appointed administrator, with John F. Whitaker and George Whitaker as two of his securities.

The administrator suggested the insolvency of the estate to the county court, where it was being administered, to the death of the administrator in 1878. The last settlement of the administrator was made in September, 1878.

John Thomason was made executor of the estate of his father, Hugh, and M. D. L. Whitaker was appointed administrator de bonis non of the estate of W. B. Rhea.

In March, 1879, the original bill in this cause was filed by the administrator de bonis non and the heirs and distributees of W. B. Rhea against the executor and sureties of Hugh Thomason, seeking to collect $7,294.49 found to be due from him on his last settlement, and praying that the settlement of the Rhea estate be removed from the county to the chancery court "to inspect, overhaul and correct all errors therein."

An amended bill was filed in April, 1879, and charges that the estate is insufficient to pay the debts of the estate, specifying a large amount of indebtedness. It makes no creditors parties. The object of the bills, as already admitted, is to recover the amount due from Hugh Thomason.

There was demurrer, which being overruled, defendant's answer admit the balance due from Thomason, but say: "Respondent, by way of further answer, would show to the court that in the first settlement made by Hugh Thomason, administrator of W. B. Rhea, deceased, with the clerk of the county court on September 13, 1865, as the settlement upon its face show, he is charged with the rent of land and negro hire of the deceased, as follows," setting out the items, and proceeding "that in his fifth settlement, on December 10, 1878, he was charged with the proceeds of the sale of lands and negroes as follows": setting them out, and concludes: "Respondents insist that said administrator's settlements are erroneous to the amount of the items set out above, consisting of the rent of land, hire of negroes, and proceeds of the sale of land and negroes. Respondents insist that all the foregoing items charged against said administrator are improper and illegal, because the proceeds arising from the rents of land and sale of negroes are not legal assets in the hands of an administrator, and he cannot be called to account for them in his capacity as administrator." The chancellor decreed against the estate of Thomason, but released his securities on their plea of the statute of limitations.

The Referees recommend a reversal of the decree of chancellor and dismissal of the bill for the reason that an administrator *de bonis non* cannot have an account from the former administrator and his sureties. In support of the recommendation we are referred to *Thomas* v. *Stanley*, 4 Sneed, 410; *Stot* v. *Alexander*,

2 Sneed, 648, and *Cheek* v. *Wheatley*, 3 Sneed, 483–4. It is sufficient to say of these cases they were all actions at law. They necessarily in their investigation would have ordered a review of the accounts of the former administrator, for which the machinery of a law court is insufficient.

In *Shackelford* v. *Runyan*, 7 Hum., 141, Judge Reese says: "However it may be in England or elsewhere, an administrator *de bonis non* in our State is clothed with the full powers and subject to all the duties of the first personal representative, and is embraced and described in our statutes by the general description of administrator, whether by such statutes powers are given or duties imposed. It results from this that he can call to account the personal representatives of the first administrator." There is nothing in our cases in conflict with this holding, nor can we see how there could be in reason and sound sense.

The defense that the settlements show that much of the funds that went into hands of Hugh Thomason was the proceeds of negro hire, land rents and sales is 'not sustained. It is not shown when the hiring, renting and selling was done, if in the lifetime of the intestate, the proceeds would be assets to be collected by the administrator. We must presume for three reasons against the position of the administrator: First, he was not authorized by law to sell, rent or hire land and negroes, and there was no proceedings to authorize them. Second, the interest account shows these items in the main to have been of sufficiently long standing to have been created by the in-

testate. Third, the administrator, shortly before his death and within less than twelve months before the filing of these bills, charged himself as administrator, without explanation or qualification, and as we have already seen, it is not claimed in the answer that he did the hiring or made the sales, while it does appear that large amounts of the money was received on sales made by the intestate.

. The plea of the statute of limitations cannot avail because the default was in September, 1878, and suit brought in March, 1879.

The heirs and distributees of W. B. Rhea were necessary and proper parties, as to them no question is made in the pleadings.

The exceptions to the report will be sustained, and the decree modified so as to hold liable the securities of Hugh Thomason on his administration bond, and in all other respects affirmed.